1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  JACK F. OTT,                                CASE NO. 1:10-cv-02144-SMS

10              Plaintiff,

                                              ORDER AFFIRMING AGENCY'S
11     v.                                     DENIAL OF BENEFITS AND ORDERING
                                              JUDGMENT FOR COMMISSIONER
12  MICHAEL J. ASTRUE,
    Commissioner of Social Security,
13
                Defendant.
14  _____/

15

16      Plaintiff Jack Ott, proceeding *pro se* and *in forma pauperis*, seeks judicial review of the

17  final decision of the Commissioner of Social Security ("Commissioner") denying his application

    for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.)*
18
    (the "Act").  The matter is currently before the Court on the parties' cross-briefs, which were
19
    submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate
20
    Judge.  Following review of the record as a whole and applicable law, this Court affirms the
21
    agency's determination to deny benefits to Plaintiff.
22
**I.**     **Administrative Record**
23
        **A.**     **Procedural History**
24
        Plaintiff was insured under the Act through December 31, 2009.  On August 27, 2004,
25
    Plaintiff filed an application for disability insurance benefits and for supplemental security
26
    income, alleging disability beginning July 26, 2004.  His claims were initially denied on
27
    November 5, 2004, and upon reconsideration on April 14, 2005.  Plaintiff appeared and testified
28

1  at a hearing on November 17, 2006.  On March 9, 2007, Administrative Law Judge Stephen W.

2  Webster denied Plaintiff's application. The appeals council denied review on October 23, 2007.

3  Plaintiff appealed to this Court on January 30, 2008.  On March 4, 2009, the Court affirmed the

4  Commissioner's decision.

5        On June 11, 2007,  Plaintiff again filed for disability insurance benefits, alleging disability

6  beginning March 10, 2007.  His claim was initially denied on November 16, 2007, and upon

7  reconsideration on March 26, 2008.  Plaintiff appeared and testified at a hearing on November 6,

8  2009.  On December 7, 2009, Judge Thomas J. Gaye denied Plaintiff's application.  Plaintiff

9  appealed to the Administrative Council, which denied review on October 27, 2010.  Plaintiff filed

10  a complaint with this Court on November 17, 2010.

11        **B.**     **Agency Record**

12        **Plaintiff's testimony.**  Plaintiff (born December 8, 1963) lived with his disabled wife and

13  four children.  The family supported itself with Mrs. Ott's disability benefits ($1339.00 monthly)

14  and food stamps.  Plaintiff rented government subsidized housing.

15        MediCal paid for Plaintiff's treatment by Dr. Patel, who treated Plaintiff 25 or 30 times in

16  2009.  Plaintiff had not had x-rays of his back since August 9, 2004.  Although Plaintiff worked

17  after those x-rays were taken, he pinched a nerve while playing ball with his son.  Within a few

18  days, Plaintiff was unable to get out of bed.  Dr. Patel treated plaintiff with spinal injections.

19  Plaintiff also saw Dr. Parmar, a pain management specialist, who provided methadone for

20  Plaintiff's chronic pain.

21        Plaintiff began walking with a cane in 2008.  Because he was heavily medicated, he had

22  difficulty keeping his balance.

23        Plaintiff's financial problems and inability to work resulted in his depression.  He

24  constantly had migraine headaches and nausea.  Plaintiff slept a lot and struggled to get out of

25  bed.  He occasionally helped his wife by folding laundry or shopping, but did not care for the

26  children since that was too stressful.  Plaintiff did not attend things such as his children's games

27  and school meetings because he had no interest.

28  ///

2

1    Plaintiff's health problems caused friction between Plaintiff and his wife.  They fought
2  frequently about caring for the children and their financial needs.

3    Plaintiff completed a GED.  From 2001 to 2004, he did street maintenance work for the
4  City of Delano, filling pot holes, painting signs and streets, shoveling coal mix, and similar tasks.
5  He lifted fifty pounds on a daily basis.  For eight years before that, Plaintiff worked for Heilig
6  Meyers Furniture Company until it went out of business.  From 1988 to 1992, Plaintiff worked at
7  the recycling center.

8    **Testimony of Plaintiff's wife.**  Plaintiff's wife, Karen Ott, testified that Plaintiff was in
9  severe, constant pain in his back, lower leg, and hip.  He experienced severe migraine headaches
10 and nausea.  He had difficulty getting up in the morning, sometimes beginning the day with dry
11 heaves.  Plaintiff had previously been a good provider who rarely took a sick day.

12    Plaintiff sometimes had to go to the emergency room for treatment of the spinal headaches
13 caused by his back condition.  The doctors there sometimes refused to treat him, erroneously
14 thinking him to be a drug addict.  When emergency room staff denied treatment, Plaintiff had to
15 wait to see his primary care physician for a Toradol shot.[1]

16    Plaintiff was very difficult to live with.  He was frequently very angry ("aggressive") with
17 his wife and children.  He insisted that his children, the youngest of whom was eight, remain
18 home as much as possible rather than participating in sports or other activities.

19    Mrs. Ott confirmed that she was receiving disability assistance after experiencing an
20 emotional breakdown in 2005.  Plaintiff was only able to provide help occasionally, popping
21 something in the microwave or fixing a sandwich.  He rarely drove.  Mrs. Ott relied on her mother
22 and aunt when she needed assistance.
23 ///
24

25   [1] Toradol (ketorolac) provides short-term relief of moderately severe pain.  It should not be used longer
26 than five days, for mild pain, or for pain from chronic conditions.  The FDA medication guide outlines multiple
   warnings for its use.  www.ncbi.nlm.nih.gov/pubmedhealth/PMH000918/ (September 13, 2012).

27 Medical records indicated that, on at least one occasion, when emergency room personnel refused to provide the
28 injection that Plaintiff demanded, Plaintiff left the emergency room rather than wait for his own physician.  Plaintiff
   declined the oral medication offered, stating that he "had pills at home."

1    **Adult function report.**  On a typical day, Plaintiff rose, showered, and dressed.  If he felt
2  well, he took his children to school.  He ate breakfast, took pain and depression medications, then
3  napped until lunch time.  If he felt well enough, he drove his children home from school in the
4  afternoon.  After supper and time with his family, Plaintiff went to bed hoping for a "good night's
5  sleep."

6    Because of his pain, Plaintiff found it difficult to find a comfortable sleeping position.  His
7  pain made putting on pants, shoes, and socks difficult.  Raising his arms to comb or dry his hair
8  caused pain and tightening of his shoulders.  Twisting while sitting caused back pain.  Since his
9  prior application, Plaintiff had begun to lose normal bowel and bladder control.

10    Although Plaintiff had previously cooked full meals for his family, he had become limited
11  to microwaving prepared foods.  He folded laundry if he felt up to it.  Yard work was too
12  strenuous.  He shopped for groceries for thirty minutes or more whenever he needed to.  Plaintiff
13  reported difficulty saving and counting change, but reported that he was able to pay his bills.  He
14  had difficulty concentrating.

15    Because of depression and anxiety, Plaintiff had lost interest in television and hobbies.  He
16  could not play sports.  He fell asleep watching television.  Plaintiff went to church twice a week
17  and went to watch his son play basketball.

18    According to Plaintiff, he had difficulty getting along with others due to pain, nervousness,
19  mood changes, and bad temper.  His condition affected every function listed on the report: lifting,
20  squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair-climbing,
21  seeing, memory, completing tasks, concentration, understanding, following instructions, using
22  hands, and getting along with others.  Plaintiff summarized, "My whole life has been affected."
23  AR 183.

24    Plaintiff did not know how far he could walk; he always needed rest.  He could not pay
25  attention nor finish conversations or movies.  He became frustrated because he could not follow
26  written or spoken instructions.  Because of his short temper, he could not get along with authority
27  figures and usually quit his jobs.  He was afraid of people who abused or harassed him.
28  ///

1    **Third-party adult function report.** Mrs. Ott's report was generally consistent with the

2   one prepared by Plaintiff. She reported that Plaintiff had difficulty getting up, showering and

3   dressing. He slept a lot during the day. He took the couple's four children to school, helped with

4   household chores, such as ironing and laundry, and helped care for the children. He shopped for

5   groceries and household necessities thirty to forty-five minutes once a month. Plaintiff became

6   "stressed out" when he needed to handle financial matters.

7    Plaintiff's condition affected his sleep by causing constant jerking due to back spasms, and

8   tossing and turning to find a comfortable position. He was unable to sleep through an entire night.

9   When Plaintiff dressed, fixed his hair, and shaved, he forgot what he was doing and complained

10   of pain. Mrs. Ott believed his bladder and stomach problems resulted from his back condition.

11   He complained that it was painful to sit and that he experienced stabbing pain in his groin or

12   scrotum area. Plaintiff no longer helped with cooking except to make sandwiches or frozen

13   meals.

14    Plaintiff did not like stress, conflict, and confrontation. He had difficulty getting along

15   with other employees at his last job with the City of Delano. His condition strained his marriage

16   and caused his wife and children to suffer.

17    **Medical evidence.**[2] On January 18, 2007, an unidentified doctor at San Joaquin Valley

18   Pulmonary Medical Group treated Plaintiff for bronchitis. Plaintiff reported increased pain in his

19   arthritic right knee, but an x-ray examination was negative. On April 20, 2007, Plaintiff reported

20   no trouble with breathing. The unidentified doctor noted that Plaintiff was "doing OK," and that

21   he had been seen by pain management to schedule epidural injections in his neck. AR 267. On

22   July 9, 2007, Plaintiff's asthma was "doing pretty good." AR 266. Plaintiff had gone to the

23   ///

24   

25    [2] As will be discussed in more detail in Section II, because the Commissioner has previously found Plaintiff
   not to be disabled, Plaintiff must overcome a presumption of nondisability by showing changed circumstances, such

26   as new and material changes to the claimant's residual functional capacity. Much of the medical evidence in the
   agency record was either submitted in the prior proceeding or relates directly to the time period evaluated in the prior

27   proceeding. Accordingly, this Court has carefully reviewed the record for evidence relating to changes in Plaintiff's
   condition after the prior adjudication. This subsection will not discuss evidence of medical evaluation or treatment

28   predating or occurring simultaneously with the period evaluated in the prior proceeding, that is, the period ending in
   about November 2006.

emergency room with a migraine after he ran out of Imitrex.  Plaintiff's pain management doctor had increased his Vicodin and added Lyrica.

On February 26, 2007, Kevin Trinh, M.D., diagnosed gastritis and noted that Vicodin helped Plaintiff's neck and back pain. On March 20, 2007, Dr. Trinh administered a lumbar epidural steroid injection (LASI) at L5/S1.  On April 20, 2007, Dr. Trinh noted that the injection had helped Plaintiff's lower back pain.  He also noted that Plaintiff had visited the emergency room with a migraine headache and been treated with Dilaudid.  At each exam, Dr. Trinh noted that Plaintiff's sleep was average.

On March 29, 2007, radiologist Donald Cornforth, M.D., evaluated a hepatobiliary scan with gallbladder ejection fraction and determined the examination to reveal a normal gall bladder and liver.

Plaintiff was treated for headache in the emergency room of Delano Regional Medical Center on July 4, 2007; November 2, 2007; November 25, 2007; February 22, 2009; May 7, 2009; December 11, 2007; July 6, 2009; August 5, 2009; and August 9, 2009.  On April 7, and October 5, 2009, Plaintiff was treated in the emergency room for anxiety that made him unable to sleep.

Beginning July 31, 2007, Plaintiff began seeing physicians at Comprehensive Medical Group.  Much of these records is illegible.  On September 28, 2007, Dr. Bensal noted that Plaintiff's neck and lower back were tender.  On multiple occasions, Plaintiff complained of mild headache.  On December 21, 2007, Dr. Patel wrote:

> Mr. Ott is a 44 year old Hispanic Male with the following medical problems: Chronic Severe Back pains requiring intraarticular injections by a pain specialist, Severe depression and anxiety requiring a psychiatrist case, abdominal pains and chronic migraines.  I feel he is unable to work due to his medical and psychological illnesses.
>
> His medications some of which are controlled would interfere with any type of work also.
>
> AR 357.

On February 4, 2008, Plaintiff complained of abnormal bladder control for the past month. Dr. Patel diagnosed a urinary tract infection.

///

Internist Radhey S. Bansal of Comprehensive Medical Group examined Plaintiff as an agency consultant on September 11, 2007.[3]  The physical examination was largely unremarkable except that examination of Plaintiff's cervical spine revealed tenderness and spasm with decreased [sic] painful movements to about 40 degrees of flexion, 20 degrees of extension, 15 degrees of lateral bending, and 30 degrees of rotations.  Examination of Plaintiff's lumbar spine revealed moderate tenderness and some spasms.  Movement of the lumbosacral spine was 60 to 65 degrees flexion, 15 degrees extension and 15 degrees lateral bending.  The straight leg raising test was slightly positive bilaterally at 35 to 40 degrees but without focal neurological deficits.  Plaintiff walked slowly without a limp and demonstrated grip strength within normal limits.  Dr. Bansal diagnosed:

1.   Chronic moderately severe low back pain as well as neck pain secondary to disk disease and radiculopathy at both these areas, status post multiple epidural injections in both places with intermittent exacerbation of symptoms, but continuing chronic process.
2.   Moderately severe depression and frustration as well as anxiety.
3.   History of some abdominal pains, probably irritable bowel syndrome and also some chronic peptic disease for which he sees gastroenterologist off and on, but that is not really the reason for disability.  He is taking some Prevacid and Donnatal on p.r.n. basis and doing fairly okay.
4.   History of chronic migraine headaches for many years as well and also doing okay with various medications.

AR 276.

Dr. Bansal summarized:

This 43-year-old gentleman does seem to have some restrictions because of his neck and back pain and he is limited in doing any heavy weight lifting or pushing, pulling, etc., of more than twenty pounds.  However, he may do sitting of up to eight hours a day with intermittent breaks.  He may be somewhat limited in doing frequent bending or crawling, etc., and may be limited also in going some on the heights like going up the ladder, etc.  The use of the hands though should be unlimited up to at least eight hours a day with intermittent breaks and his standing could be up to 4 to 6 hours a day at least with intermittent breaks as well.

His main problem for disability though seems to be his severe depression, anxiety, frustration and anger, etc.  I understand that [he] has appointment with psychiatrist for the evaluation in that regard[.  Their] report should be incorporated into this before deciding the final disability status.

AR 276, 278.

[3]  In the report, Dr. Bansal noted that he was familiar with Plaintiff. Plaintiff's medical records indicate that he was among Plaintiff's treating physicians at Comprehensive Medical Group.

On September 14, 2007, psychologist J.K. Zhang, Psy.D., conducted a psychological examination of Plaintiff for the agency.  Dr. Zhang opined that Plaintiff's depression and anxiety were secondary to his physical problems.  He was being treated with psychotropic medicine with mediocre results.  According to Zhang, Plaintiff may have difficulty maintaining concentration, persistence, and pace, but he retained the ability to understand, remember, and carry out simple instructions.

Randall J. Garland, Ph.D., performed the psychiatric review technique on October 22, 2007.  He determined that Plaintiff had affective disorders that were not severe.  All functional limitations were mild.  Plaintiff had no episodes of decompensation.  Dr. Garland opined that Plaintiff provided no evidence to rebut the presumption of continuing nondisability and that his non-severe mood disorder did not significantly impair his ability to work.

Anne M. Khong, M.D., prepared a physical residual functional capacity assessment on November 1, 2007.  She opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could sit, stand, and walk six hours in an eight hour work day; and had unlimited ability to push and pull.  Plaintiff could frequently balance and kneel, and occasionally climb, stoop, crouch, and crawl.  In the accompanying case analysis, Dr. Khong noted that Plaintiff's medical condition had not changed since his prior decision except that he no longer alleged asthma as a severe impairment.

A March 6, 2008 case analysis countersigned by Lavanya V. Bobba, M.D., noted that the most recent psychiatric medical records were dated November 2005.  No evidence existed of a change in Plaintiff's psychological condition since the prior decision.

Diagnostic x-rays administered at Delano Regional Medical Center on July 6, 2009 showed minimal degenerative changes of Plaintiff's cervical spine.

**Vocational expert.**  Linda Ferra testified as vocational expert.  The ALJ asked a single hypothetical question in which he directed Ferra to assume a person of Plaintiff's age, education, and past work experience.  The hypothetical individual was capable of light work; could occasionally climb ramps and stairs, stoop, crouch, and crawl; but could never climb ropes, ladders, or scaffolds.  Because of his pain, he had a moderate limitation of concentration,

persistence, and pace that limited him to simple repetitive tasks.  Ferra opined that such an individual could not perform Plaintiff's past work.  The individual would have no transferable skills and would require entry level light work.  Available jobs included assembler (DOT 712.687-010), with 12,000 jobs in California and 120,000 jobs in the nation; packing line worker (DOT 753.687-038), with 60,000 jobs in California and 600,000 in the nations; and copy machine operator (DOT 207.685-014), with 4000 jobs in California and 40,000 in the nation.

Plaintiff's representative did not pose a hypothetical question but requested clarification of Plaintiff's status as a skilled or unskilled worker.

## II.   Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following questions:

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |

1   Step five:      Does the claimant have the residual functional capacity to perform
                    any other work?  If so, the claimant is not disabled.  If not, the
2                   claimant is disabled.

3   *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

4       In addition, when an applicant has one or more previous denials of applications for

5   disability benefits, he or she must overcome a presumption of nondisability.  The principles of *res*

6   *judicata* apply to administrative decisions, although the doctrine is less rigidly applied to

7   administrative proceedings than in court.  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988);

8   *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988).  Social Security Acquiescence Ruling

9   ("SSR") 96-4(9), adopting *Chavez*, applies to cases involving a subsequent disability claim with

10  an unadjudicated period arising under the same title of the Social Security Act as a prior claim in

11  which there has been a final administrative decision that the claimant is not disabled.  A previous

12  final determination of nondisability creates a presumption of continuing nondisability in the

13  unadjudicated period.  *Lester*, 81 F.3d at 827.  The presumption may be overcome by a showing

14  of changed circumstances, such as new and material changes to the claimant's residual functional

15  capacity, age, education, or work experience.  *Id.* at 827-28; *Chavez*, 844 F.2d at 693.

16      **2009 decision.**  Administrative law judge Stephen W. Webster determined that Plaintiff

17  had severe impairments of degenerative disc disease and depressive disorder NOS.  *Ott v. Astrue*,

18  Doc. 19 at 8 (E.D.Cal. March 4, 2009) (NO. 1:08-cv-00150-GSA).  Plaintiff retained the residual

19  functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally; to

20  stand, walk, and sit six hours in an eight-hour work day; and to occasionally climb, stoop, kneel,

21  crouch, or crawl.  *Id.*  Plaintiff was limited to occasional contact with the public, co-workers, and

22  supervisors.  *Id.*  As a result, Plaintiff could not return to his former work as a warehouse

23  manager, municipal maintenance worker, or salvage laborer.  *Id.* at 9.  Nonetheless, he could

24  perform jobs that existed in significant numbers in the national economy.  *Id.*

25      **This decision.**  Judge Gaye found that Plaintiff had not engaged in substantial gainful

26  activity since the alleged onset date of March 10, 2007.  His severe impairments were back pain,

27  GI symptoms, neck pain, and mood disorder.  Plaintiff did not have an impairment or combination

28  ///

1  impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P,

2  Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

3       Plaintiff retained the residual functional capacity to perform light work as defined in 20

4  C.F.R. § 404.1567(b) except that he could only occasionally climb ramps or stairs, stoop, crouch,

5  or crawl; could never climb ladders, ropes, or scaffolds; had the ability to understand, remember,

6  and carry out simple instructions; and had moderate limitations in concentration, persistence, and

7  pace.

8       Plaintiff was not able to perform his past relevant work.  Nonetheless, considering

9  Plaintiff's age, education, work experience, and residual functional capacity, jobs that Plaintiff

10  could perform existed in significant numbers in the national economy.

11  **III.**   **Scope of Review**

12       Congress has provided a limited scope of judicial review of the Commissioner's decision

13  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

14  a court must determine whether substantial evidence supports the Commissioner's decision.  42

15  U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*,

16  402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d

17  1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept

18  as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must

19  be considered, weighing both the evidence that supports and the evidence that detracts from the

20  Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

21  evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g.,*

22  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's

23  determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if

24  the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and*

25  *Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).  "Where the evidence as a whole can support

26  either outcome, we may not substitute our judgment for the ALJ's."  *Key v. Heckler*, 754 F.2d

27  1545, 1549 (9th Cir. 1985).

28  *///*

1   **IV.   Did the ALJ's Findings at Step Three Contradict his Findings at Step Two?**

2        Plaintiff contends that the ALJ erred in finding that he had severe impairments at step

3   three (AR 12, ¶ 3), then finding at step four (AR 12, ¶ 4) that Plaintiff's severe impairments or

4   combination of impairments did not meet or medically equal one of the listed impairments (20

5   C.F.R., Pt. 404, Subpt. P, App. 1).  The Commissioner responds that no physician, including Dr.

6   Patel, opined that Plaintiff's severe impairments satisfied any listing requirement.  After

7   considering Plaintiff's severe impairments in light of the elements of the listed impairments set

8   forth in the regulations, the Court finds no contradiction in the ALJ's conclusions at steps two and

9   three and suspects that Plaintiff has simply misunderstood the nature of the analysis conducted at

10  steps two and three.

11       At step two of the analysis, the claimant has the burden of producing medical evidence of

12  signs, symptoms, and laboratory findings supporting the conclusion that his or her impairment is

13  severe and can be expected to last more than twelve months.  *Ukolov v. Barnhart*, 420 F.3d 1002,

14  1004-05 (9th Cir. 2005).  A claimant cannot establish a severe impairment based only on his or her

15  symptoms.  SSR 96-4p.  A severe impairment is one that significantly limits the claimant's

16  physical or mental ability to perform basic work activities.  *Wafer v. Sullivan*, 1994 WL 141649 at

17  *4 (N.D. Cal. April 13, 1994) (No. C-92-3763 EFL); 20 C.F.R. § 404.1521.  Basic work activities

18  include "the abilities and aptitudes to do most jobs," including "(1) [p]hysical functions such as

19  walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2)

20  [c]apabilities for seeing, hearing, and speaking; (3) [u]nderstanding carrying out and remembering

21  simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-

22  workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting."  20

23  C.F.R. § 404.1521(b).  If the evidence submitted does not support a finding that a claimant has a

24  severe impairment, he or she must be determined not to be disabled at step two.  In this case, the

25  ALJ determined that Plaintiff's back pain, GI symptoms, neck pain, and mood disorder

26  constituted severe impairments since these impairments limited Plaintiff's ability to perform

27  work.

28  ///

1     At step three, the ALJ must compare the signs, symptoms, and laboratory findings of the

2 severe impairment or combination of severe impairments identified at step two to the elements of

3 the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  The listing of impairments

4 describes, for each of the major body systems, impairments considered severe enough to prevent

5 an individual from performing any gainful work, whatever his or her age, education, or work

6 experience.  20 C.F.R. § 404.1525 (a).  If one or more of the claimant's severe impairments meets

7 the requirements of an impairment, the claimant must be determined to be disabled at step 3.  If

8 the characteristics of a claimant's severe impairments do not meet or medically equal the elements

9 of a listed impairment, however, the claimant is not automatically found not to be disabled.  20

10 C.F.R. § 404.1525 (c)(5). Analysis simply continues at step four, with the ALJ considering

11 whether, in light of his severe impairments, the claimant's residual functional capacity is

12 sufficient for him or her to perform past relevant work.  20 C.F.R. § 404.1545 (a)(5).

13 **V.      Plaintiff's Credibility**

14     Plaintiff contends that the ALJ erred in failing to accept Plaintiff's testimony and other

15 representations of his physical condition and ability to work.  An ALJ is not "required to believe

16 every allegation of disabling pain" or other non-exertional requirement.  *Orn v. Astrue*, 495 F.3d

17 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  But if he or

18 she decides to reject a claimant's pain testimony after a medical impairment has been established,

19 the ALJ must make specific findings assessing the credibility of the claimant's subjective

20 complaints.  *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir.

21 1991).  *See also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  "[T]he ALJ must identify

22 what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*,

23 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th

24 Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining why the

25 testimony is unpersuasive.  *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security*

26 *Administration*, 466 F.3d 880, 885 (9th Cir. 2006).  The credibility findings must be "sufficiently

27 specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

28 testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

1        When weighing a claimant's credibility, the ALJ may consider the claimant's reputation

2    for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct,

3    claimant's daily activities, claimant's work record, and testimony from physicians and third

4    parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social*

5    *Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary

6    techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent

7    statements concerning the symptoms, and other testimony by the claimant that appears less than

8    candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

9    prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533

10   F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the

11   ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her

12   decision. *Thomas*, 278 F.3d at 959.

13       The Ninth Circuit has summarized the applicable standard:

14       [T]o discredit a claimant's testimony when a medical impairment has been
         established, the ALJ must provide "'specific cogent reasons for the disbelief.'"
15       *Morgan*, 169 F.3d [595,] 599 [9[th] Cir. 1999) (quoting *Lester*, 81 F.3d at 834). The
         ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.*
16       Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a
         malinger, those "reasons for rejecting the claimant's testimony must be clear and
17       convincing." *Id.* Social Security Administration rulings specify the proper bases
         for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's
18       testimony cannot be supported by reasons that do not comport with the agency's
         rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have
19       the same force and effect as the statute or regulations, they are binding on all
         components of the Social Security Administration, . . . and are to be relied upon as
20       precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th
         Cir. 1998) (concluding the ALJ's decision at step three of the disability
21       determination was contrary to agency rulings and therefore warranted remand).
         Factors that an ALJ may consider in weighing a claimant's credibility include
22       reputation for truthfulness, inconsistencies in testimony or between testimony and
         conduct, daily activities, and "unexplained, or inadequately explained, failure to
23       seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603;
         *see also Thomas*, 278 F.3d at 958-59.

24
25       *Orn*, 495 F.3d at 635.

26       In this case, the ALJ analyzed the credibility of Plaintiff's testimony in light of the

     evidence in the record as a whole, including Plaintiff's medical records and Mrs. Ott's testimony.
27
     AR 14-16. He concluded:
28

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In evaluating the claimant's subjective complaints and alleged limitation, it is noted that he is fairly credible, but the record does not fully support his allegations. While the claimant does have back pain, the medications and treatment help. Recent cervical spine x-ray in June 2009 revealed minimal degenerative changes, and no surgery has been recommended.

Regarding gallbladder problems, hepatobiliary scan with gallbladder ejection fraction in March 2007 was normal. Regarding asthma, treatment notes reflect wh was doing good with no breathing problems. While he had multiple visits to the emergency room regarding headaches, they are relieved with injections. The internist [consulting examination] revealed he was neurologically intact.

Despite longstanding depression, he has adequate appetite, mental status examinations have been essentially normal; medications control symptoms and he has denied side effects from the medications.

AR 16 (*citations to hearing exhibits omitted*).

As detailed in the statement of the agency record above, substantial evidence in the record supported the ALJ's findings and conclusions. The law requires nothing more. That Plaintiff would have construed the evidence differently and reached another conclusion is immaterial.

## VI.    Mrs. Ott's Credibility

Plaintiff objects to the ALJ's determination to consider his wife's testimony but to diminish its weight based on the family's financial needs. *See* AR 16. The Court will not second-guess the ALJ's assessment of Mrs. Ott's testimony.

"Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account, unless he ultimately determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), *quoting Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Friends and family members who are in a position to observe the claimant's symptoms and daily activities are competent to testify about their observations of the claimant's condition. *Dodrill*, 12 F.3d at 918-19. An ALJ's disregard of the testimony of friends and family members violates the regulations which provide for consideration of the observations of non-medical sources regarding the effects

of the claimant's impairments on his ability to work.  *Id., citing* 20 C.F.R. § 404.1513(e)(2).[4]  *See*

*also Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  When a claimant alleges symptoms

that are not supported by medical evidence in the record, the agency directs the adjudicator to

obtain information about those symptoms from third parties likely to have such knowledge.  SSR

88-13.  The ALJ must give "full consideration" to such testimony.  *Id.*

On the other hand, an ALJ must be sensitive to ordinary credibility factors that may render

a third party's testimony less than fully credible.  A substantial portion of Mrs. Ott's testimony did

not concern Plaintiff's symptoms but reflected the financial and emotional difficulties experienced

by Plaintiff's family.  She added that she and the children suffered from Plaintiff's verbal abuse

and that she had resorted to marriage counseling in an attempt to keep the family together.  While

the Court is sympathetic to her plight, the financial and emotional fall-out of a claimant's illness

on his or her family do not constitute a recognizable basis for an award of disability benefits.

Mrs. Ott's testimony also lacked credibility to the extent that it merely restated Plaintiff's

subjective complaints, which were not fully supported by objective medical evidence.

The ALJ did not err in minimizing the weight of Mrs. Ott's testimony.

## VII.   Medical Opinions

Plaintiff contends that the ALJ erred in failing to adopt Dr. Patel's opinion and Dr.

Zhang's examination summary.

### A. In general

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions

regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to

perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  An ALJ is "not bound

by an expert medical opinion on the ultimate question of disability."  *Tomasetti*, 533 F.3d at 1041;

S. S. R. 96-5p.  The regulations provide that medical opinions be evaluated by considering (1) the

examining relationship; (2) the treatment relationship, including (a) the length of the treatment

relationship or frequency of examination, and the (b) nature and extent of the treatment

---

[4]  The relevant section is now designated 20 C.F.R. § 1513 (d)(4).

1   relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that

2   support or contradict a medical opinion.  28 C.F.R. § 404.1527(d).

3          Three types of physicians may offer opinions in social security cases: "(1) those who

4   treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the

5   claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant

6   (nonexamining physicians)." *Lester*, 81 F.3d at 830.  A treating physician's opinion is generally

7   entitled to more weight than the opinion of a doctor who examined but did not treat the claimant,

8   and an examining physician's opinion is generally entitled to more weight than that of a non-

9   examining physician. *Id.*  An ALJ may rejected an examining doctor's opinion in favor of that of

10  a non-examining physician, if the non-examining physician's opinion is supported by and

11  consistent with other evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

12  1995).

13         Once a court has considered the source of a medical opinion, it considers whether the

14  Commissioner properly rejected a medical opinion by assessing whether (1) contradictory

15  opinions are in the record; and (2) clinical findings support the opinions.  The ALJ may reject the

16  uncontradicted opinion of a treating or examining medical physician only for clear and convincing

17  reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831.  Even though the

18  treating physician's opinion is generally given greater weight, when it is contradicted by an

19  examining physician's opinion that is supported by different clinical findings the ALJ may resolve

20  the conflict. *Andrews*, 53 F.3d at 1041.  The ALJ must set forth a detailed and thorough factual

21  summary, address conflicting clinical evidence, interpret the evidence and make a finding.

22  *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) .  The ALJ need not give weight to a

23  conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113

24  (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.  The ALJ must tie the objective factors or the record

25  as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418,

26  422 (9th Cir. 1988).

27         An ALJ is not required to accept the opinion of any physician, including a treating

28  physician, if the opinion is brief, conclusory, and inadequately supported by clinical findings.

*Thomas*, 278 F.3d at 957. When a treating physician's medical opinion is contradicted by the opinion of another physician, the ALJ is required to do no more than provide specific and legitimate reasons for discounting the treating physician's opinion. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009). The ALJ did so here.

**B.  Dr. Patel**

Beginning July 31, 2007, Plaintiff began seeing physicians at Comprehensive Medical Group. Dr. Patel was one of several physicians who examined or treated Plaintiff there. Less than five months later, on December 21, 2007, Dr. Patel wrote:

> Mr. Ott is a 44 year old Hispanic Male with the following medical problems: Chronic Severe Back pains requiring intraarticular injections by a pain specialist, Severe depression and anxiety requiring a psychiatrist care, abdominal pains and chronic migraines. I feel he is unable to work due to his medical and psychological illnesses.
>
> His medications some of which are controlled would interfere with any type of work also.

AR 357.

Plaintiff contends that the ALJ erred in failing to adopt Dr. Patel's opinion that Plaintiff was disabled. Plaintiff misunderstands the weight to be given to Dr. Patel's opinion.

First, Dr. Patel's opinion is factually incorrect. The agency record includes no evidence of any psychiatric or psychological treatment after 2005, a period covered by Plaintiff's prior disability case. That the *Chavez* decision required Plaintiff to prove a change in his psychiatric (psychological) condition after the prior decision in order to overcome the presumption of continued nondisability compounds the error.

Second, to the extent that Dr. Patel opines that Plaintiff is disabled, his opinion is not cognizable. A physician may not opine on ultimate legal determinations reserved to the Commissioner. *Tomasetti*, 533 F.3d at 1041.

Third, to be cognizable, a physician must tie his opinion to objective factors of the claimant's condition. Dr. Patel did not explain either his opinion that Plaintiff was unable to work due to his medical and psychological illnesses, or his opinion that Plaintiff's medications would interfere with any type of work. An ALJ is not required to accept the opinion of any physician,

1   including a treating physician, if the opinion is brief, conclusory, and inadequately supported by

2   clinical findings.  *Thomas*, 278 F.3d at 957; *Meanel*, 172 F.3d at 1113; *Magallanes*, 881 F.2d at

3   751.  The ALJ did not err in rejecting Dr. Patel's conclusory and unsupported opinion.

4       **C.     Dr. Zhang**

5       On September 14, 2007, psychologist J.K. Zhang, Psy.D., conducted a psychological

6   examination of Plaintiff for the agency.  He summarized his clinical interview:

7       The primary impairment appears to be medical in nature and should be deferred to
        the assessment of his physicians.  Psychiatrically, the claimant suffers from
8       symptoms of depression and anxiety secondary to his medical problems.  He is
        receiving psychotropic medication with mediocre result.  At present he may have
9       some difficulty maintaining adequate concentration, persistence and pace.  His
        capacity to understand, remember, and carry out simple instructions is intact.  If
10      awarded disability benefits, he should be able to manage his own funds.

11      AR 283.

12      Plaintiff contends that Dr. Zhang's statement that Plaintiff could manage his own

13  disability funds indicates that Plaintiff is eligible for benefits.  Even if Plaintiff's reading of Dr.

14  Zhang's summary were correct, Zhang's opinion would then be uncognizable for usurping a

15  determination reserved to the Commissioner.  But Plaintiff has misread the opinion.  Dr. Zhang

16  made no statement that Plaintiff was disabled but simply opined that, in the event that the

17  Commissioner determined that Plaintiff was entitled to benefits, Plaintiff had the capacity to

18  manage his own benefits and would not require a trustee to manage the funds for his benefit.

19  Because the ALJ concluded that Plaintiff's depression did not prevent him from working, he did

20  not need to consider to whom Plaintiff's benefits should be paid.

21      In fact, Dr. Zhang carefully avoided offering an opinion on the ultimate question of

22  disability, deferring to the opinions of medical doctors after opining that Plaintiff's depression and

23  anxiety were products of his physical ailments.  Zhang then opined both that the depression and

24  anxiety affected Plaintiff's ability to maintain concentration, persistence and pace, and that

25  Plaintiff retained the ability to understand, remember, and carry out simple instructions.  The ALJ

26  gave great weight to Dr. Zhang's opinions and incorporated them into his hypothetical question to

27  the Ms. Ferra, the vocational expert.

28  ///

1   **D.    Summary**

2       The ALJ properly evaluated the opinions of Drs. Patel and Zhang.

3   **VIII.   Statement of the Case**

4       Plaintiff objects to the ALJ's failure to comment upon an unsigned and unattributed

5   document entitled "Statement of the Case" that appears at AR 466-67.  The document appears to

6   have been prepared by Plaintiff or his attorney or representative to argue a basis for granting

7   Plaintiff benefits: It is not evidentiary.  Although the document may be based in Plaintiff's

8   medical records, it does not, of itself, constitute proof of any of the propositions it argues.  The

9   ALJ did not err in failing to discuss it in the hearing decision.

10  **IX.    Request for Subpoena**

11      Plaintiff contends that the ALJ erred in failing to acknowledge his September 23, 2009

12  written request for a subpoena for Dr. Patel to testify at his hearing.  Other than this written

13  request, which was apparently prepared and signed by Plaintiff himself, neither Plaintiff nor his

14  representative raised the issue again until this appeal.

15      A claimant bears the responsibility of producing unredacted medical evidence establishing

16  his or her impairment(s) and the effect of the impairment(s) on the claimant's functioning.  20

17  C.F.R. § 404.1512 (c).  Although a disability application is typically reviewed on written medical

18  records, a claimant may also present a physician's testimony at an administrative hearing.  20

19  C.F.R. § 404.1512 (a)(3).  If necessary, the claimant may request issuance of a subpoena to

20  compel production of evidence or testimony.  20 C.F.R. § 404.916(b)(1).

21      "When it is reasonably necessary for the full presentation of a case, an administrative law

22  judge . . . . may . . . . at the request of a party, issue subpoenas for the appearance and testimony of

23  witnesses."  20 C.F.R. § 404.950 (d)(1).  The regulation continues:

24      Parties to a hearing who wish to subpoena documents or witnesses must file a
        written request for the issuance of a subpoena with the administrative law judge or
25      at one of our offices at least 5 days before the hearing date.  The written request
        must give the names of the witnesses or documents to be produced; describe the
26      address or location of the witnesses or documents with sufficient detail to find
        them; state the important facts that the witness or document is expected to prove;
27      and indicate why the facts could not be proven without issuing a subpoena.

28      20 C.F.R. § 404.950 (d)(2).

1     If an ALJ reasonably concludes that an individual is not a necessary witness in deciding the case

2     before him, refusing to issue a subpoena is not an abuse of discretion. *Geschke v. Astrue*, 393

3     Fed.Appx. 470, 473 (9th Cir. 2010); *Maupin v. Astrue*, 315 Fed.Appx. 602 (9th Cir. 2009).

4        For example, in *Bello v. Astrue*, 241 Fed.Appx. 426, 427 (9th Cir. 2007), the Ninth Circuit

5     reversed and remanded Bello's case based on the ALJ's refusal to subpoena an examining

6     physician, Dr. Cunningham, on whose report the ALJ relied in denying disability benefits to

7     Bello.  Bello argued that because Dr. Cunningham had not reviewed Bello's medical history file,

8     he erroneously formed his opinion of Bello's residual functional capacity without knowledge of

9     Bello's history of diabetic neuropathy. *Id.*  Accordingly, Bello sought to continue the hearing,

10    subpoena Cunningham, and cross-examine him. The Ninth Circuit judges concluded that

11    "Procedural due process require[d] that a motion to subpoena be granted "where the physician is a

12    crucial witness whose findings substantially contradict the other medical testimony." *Id., quoting*

13    *Solis v. Schweiker*, 719 F.2d 301 (9th Cir. 1983).  Dr. Cunningham's opinion, based on an

14    imperfect understanding of Plaintiff's medical history, required the subpoena and cross-

15    examination because it formed the basis for the ALJ's determination and directly contradicted the

16    opinion of Plaintiff's treating physician. *Bello*, 241 Fed.Appx. at 427.

17       In the same case, however, the Ninth Circuit rejected the claimant's argument that the

18    ALJ should have issued subpoenas for two other physicians, Dr. Huber and Dr. George, finding

19    that neither was a "crucial witness." *Id.*  The court explained that the ALJ had not based her

20    decision to deny Bello benefits on Dr. Huber's decision and had provided multiple reasons

21    independent of Dr. George's opinion for finding Bello's alleged mental impairments not to be

22    severe. *Id.  See also Galvan v. Barnhart*, 92 Fed.Appx. 476, 478 (9th Cir. 2004) (finding that the

23    ALJ did not err in denying claimant's request to subpoena non-examining physicians on which the

24    did not rely since the ALJ had relied on the opinion of Plaintiff's treating physician).

25       Plaintiff's request failed to demonstrate that Dr. Patel's testimony was reasonably

26    necessary for full presentation of his case.  Plaintiff justified his request simply by stating that Dr.

27    Patel "has knowledge and my medical records of my conditions and disabilities."  AR 211.  Not

28    only were Dr. Patel's medical records already part of the administrative record, the simple

assertion that he had "knowledge" fails to satisfy the regulatory requirement that the party requesting the subpoena state the important facts to which Dr. Patel was to testify and explain why those facts could not be proven without issuance of the requested subpoena.

Because Plaintiff sought a subpoena for no specific purpose except to further question Dr. Patel regarding the medical records that were already part of the administrative record, the ALJ did not err in failing to issue the subpoena.  Further, even if the ALJ had erred in failing to issue a subpoena for Dr. Patel, nothing suggests that the result would have differed if he had done so.  A decision will not be reversed for harmless errors.  *See, e.g., Antoniewicz v. Astrue*, 371 Fed.Appx. 854, 857 (9th Cir. 2010) (finding no error in the ALJ alleged failure to issue subpoenas for five declarants who had set forth amounts paid and expenses incurred with regard to the claimant's "side business" as a handyman since regardless of what the declarants might have testified, substantial evidence supported the ALJ's findings and the Commissioner's decision).

**X.    Conclusion and Order**

Pursuant to *Chavez*, 844 F.2d at 693, Plaintiff  had the burden of introducing proof sufficient to overcome the presumption of nondisability by demonstrating changed circumstances, such as new and material changes to the claimant's residual functional capacity, age, education, or work experience.  Plaintiff failed to carry his burden.  The ALJ's determination was supported by substantial credible evidence.

This Court hereby AFFIRMS the agency's determination to deny Plaintiff disability benefits.  The Clerk of Court is directed to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:    October 2, 2012**            _____/s/ Sandra M. Snyder_____
                                                            UNITED STATES MAGISTRATE JUDGE